United States District Court
Southern District of Texas
**ENTERED**
January 25, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CURTIS R. RADICK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:14-cv-02075 |
| | § | |
| UNION PACIFIC CORPORATION | § | |
| d/b/a UNION PACIFIC RAILROAD | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION
ON MOTION FOR SUMMARY JUDGMENT**

This matter was referred by United States District Judge Lee H. Rosenthal, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #27). In this action, Curtis Radick ("Plaintiff," "Radick") complains that his employer, Defendant Union Pacific Corporation ("Defendant," "Union Pacific," "the company") discriminated against him due to his disability, and "retaliated" against him for his failure to comply with the company's drug and alcohol policy. Pending before the court is a motion for summary judgment that was filed by Union Pacific. (Defendant Union Pacific Railroad Company's Motion for Summary Judgment ["Motion"], Docket Entry #16). Plaintiff has responded in opposition to the motion, and Defendant has replied. (Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment ["Response"], Docket Entry #22; Defendant Union Pacific Railroad Company's Reply Brief in Support of Its Motion for Summary Judgment ["Reply"], Docket Entry #23). Having reviewed the pleadings, the evidence, and the applicable law, it is RECOMMENDED that Defendant's motion for summary judgment be GRANTED.

## Background

Defendant Union Pacific is a railroad company headquartered in Nebraska. (Plaintiff's Amended Complaint ["Amended Complaint"], Docket Entry #10, at 1). In February 1982, Plaintiff Curtis Radick was hired by Union Pacific's predecessor, Southern Pacific, as a "signal" worker in Houston, Texas. (Curtis Radick Deposition Excerpts ["Radick Depo."], Docket Entry #16-1, at 11). Plaintiff currently works for Union Pacific as an electrician. (*Id.* at 15). This action arises from Radick's complaints about the discipline that he received after he was found sleeping on the job on July 7, 2013. Radick claims that the railroad company discriminated against him, because of his status as a recovering alcoholic. (Amended Complaint at 2, 3; Response at 8). He contends that other, non-disabled employees were also found sleeping on the job, but were given less severe discipline, or were not reprimanded at all. (*Id.*). While Plaintiff has not identified any similarly situated employees, he states that he cannot do so, because the company has refused to comply with certain discovery requests. (*See* Response at 7-8). Radick also alleges that the punishment that he received for sleeping on the job was in "retaliation" for testing positive on an alcohol breath test. (Amended Complaint at 4; Response at 7). His punishment included a thirty-one day suspension, without pay; eighteen months of probation; and the prospect of possible termination. (Amended Complaint 3; Radick Depo. at 45; Motion at Exhibit ["Ex."] 3, 2, 3 ). Plaintiff consented to that disciplinary scheme, however, in a written agreement that he signed on August 7, 2013. (Motion at Ex. 3, 3).

The facts show that, in November 2012, Plaintiff was working as a road electrician at the Strang Yard in La Porte, Texas. (Radick Depo. at 20). This assignment required him to "chase down [broken-down locomotives] . . . and attempt to repair them." (*Id*. at 20, 21). On November 27, 2012,

Radick was randomly selected for a drug and alcohol assessment. (Radick Depo. at 20). Following that assessment, he tested positive for the presence of alcohol, in violation of the Union Pacific Rail Road Drug and Alcohol Policy and General Code of Operating Rules. (Radick Depo. at 19, 24; Motion at Ex. 2, 1). Although the test was administered at the beginning of Radick's shift,[1] he claims that he had not been drinking "on the job."[2] (Radick Depo. at 20). After the test, he was immediately "pulled out of service," and sent home. (*Id*. at 23). Apparently, the proposed discipline for violating this provision of the company policy requires termination. (*Id*. at 25). A disciplinary hearing was scheduled for December 12, 2012, to investigate the circumstances surrounding Radick's test results. (Radick Depo. at 24; Motion at Ex. 2, 1). Plaintiff waived his right to a disciplinary hearing, however, and, instead, opted to adhere to the terms of a probation in a "Companion Agreement." (Radick Depo. at 25-26; Motion at Ex. 2, 2, 5). Under that agreement, Radick was eligible to return to work if he successfully completed a rehabilitation program, and counseling, or any follow-up treatment that was deemed necessary by the Employee Assistance manager. (Radick Depo. at 26; Motion at Ex. 2, 2). Other conditions to the probation included negative drug and alcohol test results for up to sixty months from the date of his return to service, adherence to a rehabilitation plan, and permanent abstention from the use of prohibited substances. (*See id*.). Should Radick fail to comply with the terms of that agreement during the twelve-month probationary period, he was subject to immediate dismissal. (Motion at Ex. 2, 5).

Radick and John Wolff ("Wolff"), his union representative, signed the Companion

---

[1]Plaintiff's blood alcohol content level was 0.043 forty-four minutes after his shift began. (Radick Depo. at 60). Radick claims that he tested positive for alcohol, because he drank before he came to work. (*Id*. at 20). He also claims that he does not remember how much he had to drink that day. (*Id*. at 26).

[2]Plaintiff stated that he cannot recall whether he drove a company vehicle during his shift that day. (*See* Radick Depo. at 22).

Agreement on November 29, 2012. (Radick Depo. at 29,30; Motion at Ex. 2, 5). Shortly after

signing the agreement, Plaintiff began attending Alcoholics Anonymous (AA) meetings. (Radick

Depo. at 28). In December 2012, he sought treatment at Cornerstone of Recovery ("Cornerstone"),

a residential alcohol and drug addiction rehabilitation facility in Tennessee. (*Id*. at 27-29). Plaintiff

was a patient at Cornerstone for thirty-five days. (*Id.* at 27).

On April 1, 2013, Radick obtained another, temporary position as a road electrician with

Union Pacific. (*Id.* at 35, 36). He was assigned to work the 10 p.m. to 6:00 a.m. shift[3] at the Strang

Yard. (*Id.* at 36). In an email, dated July 6, 2013, Plaintiff's immediate supervisor, Cyrus Holiday

("Holiday"), complained that a manager of yard operations reported that he had "been having

problem[s] [with] the phone being answered [during] midnights [on] Fridays and Saturdays [] at

Strang [Yard]." (*Id.* at 36, 38; Motion at Ex. 2, 7). Holiday agreed that he had been having similar

difficulty, so he decided to investigate the problem. (*Id.* at 39, Motion at Ex. 2, 7). The next day,

Holiday arrived at the yard and found Radick "asleep in [his] office [in] a portable [] outdoor

chair[.]" (Radick Depo. at 40; Motion at Ex. 2, 9). Holiday observed that Plaintiff had lined up two

other chairs to form a rectangle, and was also equipped with blankets and a pillow. (Motion at Ex.2,

9.). Holiday then called David Walder ("Walder"), a shift manager, who instructed Radick to submit

to another drug and alcohol assessment. (Amended Complaint at 3). Those test results were negative.

(*Id*.; Motion at Ex. 2, 10-11). Nevertheless, Plaintiff was removed from that shift for exhibiting an

"indifference to duty[,]" sleeping during his shift, and bringing bedding from his home. (Radick

Depo. at 40; Motion at Ex. 2, 8).

Because he was still on probation, Union Pacific managers recommended various

_____

[3]Union Pacific employees refer to these shifts as "midnights." (*See id.* at 38).

disciplinary actions toward Plaintiff following that incident.[4] The most lenient proposal was that Radick be placed on another probation for sixty days. (Amended Complaint at 3, Ex. 1; Radick Depo. at 42-42). The most severe proposal was termination. (Amended Complaint at 3, Ex. 1; Radick Depo. at 44). Again, however, Plaintiff chose to relinquish his right to a hearing, and, instead, elected to have his union representative negotiate another compromise ("the Second Agreement") on his behalf. (Amended Complaint at 3; Motion at 3). Under the terms of the Second Agreement, Plaintiff was subject to a thirty-one day suspension, without pay, and was prohibited from holding a road truck position for eighteen months. (Amended Complaint at 3; Radick Depo. at 45; Motion at Ex. 3, 2). He was allowed to exercise his seniority rights in the Houston Locomotive Shop, only, and he was subject to immediate dismissal if he was found to be "indifferent to duty" during the eighteen month probationary period. (Motion at Ex. 3, 2). Radick and his union representative signed the Second Agreement on August 7, 2013. (Motion at Ex. 3, 3).

In this litigation, Radick was deposed on November 24, 2014, and he admitted not only that he had slept at work on July 7, 2013, but that he had slept at work on multiple occasions prior to that date. (Radick Depo. at 40, 61). He said that it is also "possible" that he "intentionally" slept at work on five, or more, occasions as well. (*Id*. at 61). Likewise, Radick confirmed that, on July 7, 2013, he brought items to work to "make a bed[.]" (Radick Depo. at 40). Plaintiff said that bringing the bedding items to work, and using them to sleep, is a "bad habit." (*Id*. at 41). However, he claims that the punishment that he received is "extreme for what [he] did." (Radick Depo. at 47). He further claims that he signed the Second Agreement "under [] duress[,]" because he was not made aware of all of its terms until he was asked to sign it. (Amended Complaint at Ex.1; Radick Depo. at 47-

---

[4]It should be noted that neither Plaintiff nor Defendant has submitted a copy of the "Upgrade Policy," which states the standard discipline for a first time offense of sleeping on the job. (Amended Complaint at 3, Ex.1).

48).

Plaintiff also testified that he suffers from a general "addiction problem[,]" and that he is in remission from "alcohol dependence." (Radick Depo. at 17, Amended Complaint at 2). In describing his condition, Radick stated that he is addicted to food, alcohol, and drugs, including marijuana and cocaine. (Radick Depo. at 17-18). Radick admitted that he used cocaine and marijuana while he was employed by Union Pacific, but he denied consuming those substances while he was "on the job." (*Id.* at 19). As of the date of his deposition, Radick testified that he had been sober for twenty-three months, and that he had been attending AA meetings twice a week. (*Id.* at 18).

On April 3, 2014, Radick filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Amended Complaint at Ex. 1). In that charge, he alleged that Union Pacific had discriminated against him on the basis of his disability, alcohol dependence, in remission. (*Id.*). In support of his claim, he contends that other employees who had also slept on the job were given only twelve months of probation, or were not disciplined at all. (*Id.*). Plaintiff also claims that Defendant restricted his employment to the Houston facility, in order to supervise him, even though he had completed four months of substance abuse treatment, and had been released by both his doctor and by the company's employee assistance program. (*Id.*). Radick further alleges that the company "retaliated" against him, because he failed a prior breath analysis test. (*Id.*). On April 22, 2014, the EEOC issued Radick a right-to-sue-letter on his stated claims. (*See* Amended Complaint at 2, *Id.* at Ex. 2). On July 21, 2014, Plaintiff filed this lawsuit against Union Pacific. (Plaintiff's Original Complaint ["Complaint"], Docket Entry #1). Plaintiff has stated claims for disability discrimination and retaliation, under the Americans with Disabilities Act ("ADA," "the

Act"), as amended, and under the Texas Commission on Human Rights Act ("TCHRA").[5] (Complaint at 1). In support of his claims, Radick contends that his status as a recovering alcoholic renders him disabled under the ADA. (*See* Amended Complaint at 2). He further complains that he has been subjected to discrimination and retaliation, because of that disability. (Amended Complaint at 2-3).

On March 13, 2015, Union Pacific filed its motion for summary judgment. In support of that motion, the company argues, first, that Plaintiff cannot show that his alcoholism is a disability under the ADA. (Motion at 5). Defendant contends, specifically, that Radick "has no claim that his alleged alcoholism substantially limits him in any major life function." (*Id*.; Reply at 2). Next, Defendant alleges that, even if Plaintiff is able to present a *prima facie* case of discrimination, his consent to the terms of the Second Agreement constitutes a legitimate, nondiscriminatory reason for the adverse employment actions that he is complaining about. (Motion at 5). In the alternative, Defendant argues that Plaintiff's "past conduct" provides a legitimate, nondiscriminatory reason for imposing those actions. (*Id*.). Finally, Defendant insists that Plaintiff has no evidence that the employment actions were a pretext for discrimination. (*Id*. at 6). Having reviewed the pleadings, the evidence, and the applicable law, it is recommended that Defendant's motion for summary judgment be GRANTED.

**Standard of Review**

Summary judgment is appropriate if "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant [is] entitled to judgment as a matter of law.'" *Pustejovsky v. Pliva, Inc*., 623 F.3d 271,

---

[5]Plaintiff amended his complaint to include a request for damages for income lost during his thirty-one day suspension. (*See* Amended Complaint at 4).

275-76 (5th Cir. 2010) (quoting FED. R. CIV. P. 56(c); citing *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving part[ies], there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 30, 127 S.Ct. 1769, 167 L.Ed. 686 (2007) (citations omitted); *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012). Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *see Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). "The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case." *Mack v. Equable Ascent Financial, L.L.C.*, 748 F.3d 663, 665 (S.D. Tex. 2014) (citations omitted); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "'If the moving party fails to meet its initial burden, its motion for summary judgment must be denied, regardless of the non-movant['s] response.'" *Exxon Mobil Corp. v. U.S.*, Nos. H-10-2386, H-11-1814, 2015 WL 3513949, *at 15 (S.D. Tex. June 4, 2015) (quoting *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002). If the moving party has met its Rule 56 burden, the non-moving party cannot merely rest on the allegations in his pleadings. *See Lincoln*, 401 F.3d at 349-50; *see also Kee v. City of Rowlett,* 247 F.3d 206, 210 (5th Cir. 2001). Rather, he is required to "'go beyond the pleadings'" and produce probative evidence to show "'that there is a genuine issue for trial.'" *Kee*, 247 F.3d at 210 (citations omitted); *Boudreaux*, 402 F.3d at 540; *see Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir. 2005). If he does so, his evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor."

*Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir. 2003); *see Hillman,* 697 F.3d at 302.However, if the non-movant fails to respond appropriately, or if he fails to respond at all, summary judgment is not awarded to the moving party simply by default. *See Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006); *see also Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014). Instead, as always, summary judgment is appropriate only if the moving party has demonstrated the absence of a genuine issue of material fact, and shown that judgment is warranted as a matter of law. *See Adams v. Travelers Indem. Co. of Conn*., 465 F.3d 156, 164 (5th Cir. 2006); *Day,* 768 F.3d at 435.

**Discussion**

Both the TCHRA and the ADA prohibit discrimination in the work place that is based on a disability. *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 473 (5th Cir. 2006). Because of the similarity in these statutes, courts look to federal precedent in the ADA in interpreting the TCHRA. *Id.*; *Jurach v. Safety Vision, LLC*, 72 F.Supp.3d 698, 717 n. 2 (S.D. Tex. 2014); *see also Mendoza v. City of Palacios*, 962 F.Supp.2d 868, 871 (S.D. Tex. 2013) ("TCHRA claims are properly analyzed using the same standards that are applied to ADA claims."). For these reasons, the court will apply the legal standards developed by federal courts, in ADA cases, to resolve Plaintiff's TCHRA and ADA claims. *Rodriguez*, 436 F.3d at 473-74.

The Americans with Disabilities Act precludes employers[6] from discriminating against qualified individuals on the basis of a disability. 42 U.S.C. § 12112(a); *Burton v. Freescale Semiconductor, Inc*., 798 F.3d 222, 226-67 (5th Cir. 2015). Those ADA claims that arise from

---

[6]The ADA defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year[.]" 29 C.F.R. § 1630.2(e)(1).

indirect, or circumstantial, evidence are considered under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 84 (1973). The Fifth Circuit has recently clarified that, "'[t]o establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability. *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 697 (5ᵗʰ Cir. Dec.11, 2014) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.,* 176 F.3d 847, 853 (5ᵗʰ Cir. 1999)) (second alteration in original). Once a *prima facie* case has been shown, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5ᵗʰ Cir. 2006). The employer satisfies its burden if it produces evidence that, if taken as true, "would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Palacios v. City of Crystal City, Tex.*, No. 14-51176, 2015 WL 4732254, at *4 (5ᵗʰ Cir. Aug. 11, 2015). If the employer produces such evidence, the presumption of discrimination disappears, and the burden shifts back to the employee to demonstrate that the employer's proffered reason is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142-43, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5ᵗʰ Cir. 2000). The employee must then identify or offer evidence to create a fact issue that shows "either (1) that the defendant's reason is [] a pretext for discrimination (pretext alternative); or (2) that the defendant's reason [] is only one of the reasons for its conduct, and another motivating factor is the plaintiff's [disability] (mixed-motives alternative)." *Rachid v. Jack in the Box, Inc*., 376 F.3d 305, 312 (5ᵗʰ Cir. 2004) (internal quotation marks omitted). In a mixed-motive case, if the employee establishes that discrimination was a motivating factor in the employment action at issue, the employer must show

10

that the same employment decision would have been made regardless of discriminatory animus. *Meinelt v. P.F. Chang's China Bistro, Inc*., 787 F.Supp.2d 643, 651 (S.D. Tex. 2011) (citing *Rachid*, 376 F.3d at 312). Ultimately, the employee bears the burden to show that a genuine issue of material fact exists on whether the employer discriminated against him on the basis of his disability. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097.

### *Prima Facie Case*

#### *Disability*

Under the ADA, a disability is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). In 2008, Congress amended the ADA in response to *Toyota Motor Manuf., Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed. 2d 615 (2002) and its progeny. In *Toyota*, the Supreme Court pointed out that, under the Act, a disability is a "physical or mental impairment that substantially limits one or more major life activities," but that the ADA failed to clarify what constituted a substantial limitation in a major life activity. 534 U.S. at 196, 122 S.Ct. 681. For that reason, the Court found that those terms should be "interpreted strictly to create a demanding standard for qualifying as disabled," and held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing daily activities that are of central importance to most people's daily lives." *Id.* at 97-98, 122 S.Ct. 681. The Americans with Disabilities Act Amendments Act of 2008 ("the Amended Act") discards *Toyota*'s strict construction of the terms "substantially" and "major," and effectively lowers the standard to qualify as disabled. 29 C.F.R. § 1630.2(i)(2); Pub. L. No. 110-325, 122 Stat. 3553, Section (b),¶ 4. Similarly, it rejects the EEOC's

"significantly restricted" interpretation of the phrase "substantially limits," and mandates that the statute be construed to provide broad coverage, "to the maximum extent permitted by the. . . ADA." 29 C.F.R. § 1630.2(j)(1)(i); 42 U.S.C. § 12102(4)(B); U.S. Pub. L. 110-325, Section (a), ¶1. "In other words, [] the [Amended Act] makes it *easier* to prove a disability, [however,] it does not *absolve* a party from proving one." *Neely v. PSEG Texas, Ltd. Partnership*, 735 F.3d 242, 245 (5th Cir. 2013) (emphasis in original).

Under the ADA, as amended, a "substantial impairment" is one that limits an individual's ability to perform a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii); *Sechler v. Modular Space Corp.*, No. 4:10-cv-5177, 2012 WL 1355586, at *10 (S.D. Tex. Apr. 18, 2012). "Major life activities" include "caring for oneself, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). In determining whether an individual's impairment substantially limits a major life activity, courts are to consider the following factors: "(i) The nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). The Amended Act further provides that an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. *Id.* at § 1630.2(j)(vii).

In this instance, Plaintiff's action falls under the "actual disability" prong of the ADA, because he alleges that he is disabled, as a recovering alcoholic. (Amended Complaint at 2). He contends that the phrase "substantially limits" should not be strictly construed, because the Amended Act was intended to expand the scope of disability coverage. (Response at 5) (citing *Garner v.*

*Chevron Phillips Chemical Co., L.P.*, 834 F.Supp. 2d 528, 538 (S.D. Tex. 2011). Union Pacific, on

the other hand, posits that Radick has not shown that his alleged alcoholism "substantially limits him

in any major life function." (Motion at 5). Defendant is adamant that Radick's contention that he is

a recovering alcoholic, without more, is insufficient to prove his disability status. (*See* Reply at 2).

In fact, while alcoholism may be considered an impairment, the railroad argues that "there is no *per

se* rule that categorizes recovering alcoholics as disabled." *Oxford House, Inc. v. City of Baton

Rouge, La.*, 932 F.Supp.2d 683, 688 (M.D. La. 2013); *see St. John v. NCI Bldg. Systems, Inc.*, 537

F.Supp.2d 848, 861 (S.D. Tex. 2008) (internal citations omitted); *Picarazzi v. John Crane, Inc.*, No.

C-10-63, 2011 WL 486211, at *16 (S.D. Tex. Feb. 7, 2011) (internal citations omitted). Indeed,

"mere status as an alcoholic [] does not necessarily imply [the requisite] 'limitation' [for a disability

determination.]" *Oxford House*, 932 F.Supp.2d at 689 (quoting *Regional Economic Community

Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 (2nd Cir. 2002). Instead, the court must

engage in an individualized inquiry to determine whether a particular plaintiff, who is a recovering

alcoholic, qualifies as disabled, because of his addiction. 29 C.F.R. § 1630.2(j)(iv)*; Oxford House*,

932 F.Supp.2d at 688. To prove that he is disabled, a specific plaintiff must provide evidence that

his alcoholism substantially limits his ability to perform a major life activity, as compared to most

people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii); *see Rodriguez v. Verizon Telecom*,

No. 13-cv-6969, 2014 WL 6807834, at *4 (S.D. N.Y Dec. 2, 2014) ("To constitute a disability

within the meaning of the ADA, a plaintiff is required to plead facts demonstrating that his alcohol

or drug addiction substantially limits one or more of his major life activities.").

　　　　While Radick has not expressly identified the "major life activity" in which he claims to be

substantially limited, it is apparent that "working" is the "major life activity" at issue in this case.

(*See id.* at 2, Ex. 1; Response at 5-6). Although "working" is certainly a "major life activity," "working does not necessarily mean working at a particular job of one's choice." *Picarazzi*, 2011 WL 486211, at \*17; 42 U.S.C. § 12102(2)(A); *see also* 29 C.F.R. § 1630.2(j)(3)(I) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."). When the major life activity in question is working, "the statutory phrase 'substantially limits' requires, at minimum, that [Radick] allege [that he is] unable to work in a broad class of jobs." *Kemp v. Holder*, 610 F.3d 231, 238 (5th Cir. 2010) (quoting *Sutton v. United Air Lines, Inc.* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed. 2d 450 (1999), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553. "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." *Rodriguez v. Alcoa Inc.*, 805 F.Supp.2d 310, 317 (S.D. Tex. 2011) (citing *Sutton*, 527 U.S. 471 at 492). Moreover, "[a] physical or mental impairment that only affects [an employee's] ability to engage in a narrow range of jobs or a particular job alone 'does not substantially limit one or more major life activities.'" *Id.* (quoting *Carter v. Ridge*, 255 Fed.Appx. 826, 829-30 (5th Cir. 2007). "Instead, 'the impairment must substantially limit employment generally."

In this case, Plaintiff offers his own testimony as evidence of his disability. In his deposition, Radick testified that he has abused alcohol in the past. (Radick Depo. at 17-18). He admits to drinking alcohol before his shift on November 27, 2012, the date on which he failed the breath test. (Radick Depo. at 20, 24, 26). As a result of the failed breath test, Plaintiff reports that he was removed from his position, and referred to Union Pacific's Employee Assistance Program, in lieu of termination. (*Id*. at 23, 25; Response at 5). Radick further reports that he stayed home for approximately one month, before entering a residential drug and alcohol treatment facility. (Radick

Depo. at 28). He then began attending AA meetings, as well. (*Id*.). Plaintiff remained at the treatment facility for thirty-five days, and then returned to work in late March or early April of 2013. (*Id*. at 27, 35, 36). At the time of his deposition, Plaintiff had been "clean and sober" for twenty-three months. (*Id*. at 18).

The EEOC regulations provide that the consideration of whether a disability is a "substantial limitation" is not the primary inquiry, and, consequently, "should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(iii); *see Sechler*, 2012 WL 1355586, at *11. In consideration of these regulations, and in an abundance of caution, the court finds that Radick's testimony raises a genuine issue of material fact on whether he is disabled under the ADA. The evidence shows that, on at least one occasion, Radick consumed alcohol prior to his shift, knowing that he was required to operate a motor vehicle. (*See id*. at 20, 21, 22). The record further shows that Radick took a four month leave of absence to obtain treatment for alcoholism. (*Id*. at 24, 36). At the time of his deposition, Plaintiff testified that he attends AA meetings twice a week, and that, with assistance, he has maintained his sobriety for almost two years. (*Id*. at 18). It is clear that Plaintiff was unable to fulfill his work obligations as a result of his alcohol use. The evidence also suggests that, without rehabilitative measures, Radick might lack the capacity to continue as a member of Union Pacific's workforce. *See Oxford House, Inc*., 932 F.Supp.2d at 689 (recovering alcoholic and drug addict testified that living in a group home taught her how "to become an accountable and productive member of society"). Although Plaintiff has not presented evidence specifically describing his alcohol consumption, his behavior while intoxicated, or records from the substance abuse treatment facility, such information is not necessary to prove a disability. *See* 29 C.F.R. § 1630.2(j)(v). ("The comparison of an individual's performance of a major life activity to the performance of the same

15

major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis."). On this record, Plaintiff's testimony is sufficient to raise a genuine issue of material fact on whether alcoholism has substantially impeded his ability to work in a broad class of jobs. It follows then, from his status as a recovering alcoholic, that he may be disabled under the ADA. 29 C.F.R. § 1630.2(j)(vii) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.); *Oxford House, Inc*., 932 F.Supp.2d. at 689 (recovering alcoholic's testimony that she would "be on the street" and "then back in jail" if she became active in her addiction found to be sufficient to establish disability).

### *Qualified Individual & Adverse Employment Action*

Even if Plaintiff is disabled under the ADA, however, the court must determine whether the other elements of Plaintiff's *prima facie* case have been satisfied. *Chevron*, 570 F.3d at 615. Union Pacific does not dispute that Radick is a "qualified individual" under the Act. (*See* Motion at 5). In that regard, Radick complains that the Second Agreement constituted an adverse employment action, because it caused a change in his job assignments, resulted in a loss of income, limited his work place, and included an unreasonable length of probation. (Response at 6). Plaintiff insists that these employment restrictions were unfair and outside of Union Pacific's policy standards for a "first offense of sleeping on duty." (*Id.*). Again, Defendant does not truly dispute that Radick was the subject of an adverse employment decision. (*See* Motion at 5). For that reason, the court finds that Plaintiff has presented a *prima facie* case of disability discrimination, for the purpose of this summary judgment motion.

### *Legitimate, Nondiscriminatory Reason for Adverse Employment Action*

Because Plaintiff has shown a *prima facie* case of discrimination, the burden then shifts to

16

Union Pacific to set forth a legitimate, nondiscriminatory reason for the adverse employment action. "[T]o meet its burden of production under *McDonnell Douglas*, an employer must articulate a nondiscriminatory reason with 'sufficient clarity' to afford the employee a realistic opportunity to show that the reason is pretextual." *Burton v. Freescale Semiconductor, Inc*., 798 F.3d 222, 231 (5th Cir. 2015) (quoting *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004). "[T]he ultimate issue is the employer's reasoning *at the moment* the questioned employment decision is made[.]" *Id.* (citing *Patrick*, 394 F.3d at 319) (emphasis in original). At this stage of the inquiry, neither the employer's credibility, nor its reasoning is evaluated in assessing the employer's proffered justification. *See id.* (citing *Patrick*, 394 F.3d at 318).

In its motion, Union Pacific contends that Plaintiff's consent to the Second Agreement constitutes a legitimate, nondiscriminatory reason for the employment action. (Motion at 5, Reply at 2). It is well established that a "last chance agreement" or a "return to work agreement" is an agreement between the employee and the employer, that is usually negotiated following an incident that requires employee discipline. *Dow Chemical Co. v. Local No. 564, Intern. Union of Operating Engineers*, 246 F. Supp.2d 602, 615 n. 2 (S.D. Tex. 20002); *see also Lottinger v. Shell Oil Co.*, 143 F.Supp.2d 743, 747-48 (S.D. Tex. 2001). Essentially, it is a "written agreement that the employee will be on probation for a stated amount of time, and that if the employee acts contrary to either the stated standards in the [] agreement or [the] company policies," then the employer may impose a disciplinary action that is appropriate for the circumstances, including termination. *See Dow Chemical Co.*, 246 Fed. Supp.2d at 615 n. 2. These agreements constitute formal contractual settlements of labor disputes, and are enforceable as such. *See Dow Chemical Co.*, 246 Fed. Supp.2d at 610. For that reason, it is important to distinguish between disciplining an employee for

17

unacceptable misconduct, and disciplining an employee because of a disability. *See Lottinger*, 143 F. Supp.2d at 768. Here, when Union Pacific and Radick negotiated the Second Agreement, the parties formed a binding contract which set out Plaintiff's punishment for sleeping on the job. Although Radick claims that he signed the Agreement under duress, he had the assistance of a union representative  at that time, and he was free to reject the terms of the Agreement, and present a defense at a disciplinary hearing. He chose not to exercise those rights. On this record, the court is persuaded that Union Pacific has satisfied its burden here.

**Pretext**

Because Union Pacific has provided a legitimate, nondiscriminatory reason for imposing the adverse employment action, the burden shifts back to Radick to present evidence that Union Pacific's justification is a pretext for discrimination. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005). "Pretext can be shown either 'through evidence of disparate treatment,' *or* by evidence that the 'proffered explanation is false or unworthy of credence.'" *Hunter v. Pacific R. Co.*, No. H-11-3408, 2013 WL 3229910, at *5 (S.D. Tex. June 25, 2013) (quoting *Laxton v. Gap Inc.*, 333 F. 3d 572, 578 (5th Cir. 2003) (emphasis added). To raise a factual dispute, a plaintiff must refute each of the defendant's proffered reasons with "substantial evidence." *Richard v. Clear Lake Regional Medical Center*, No. H-14-358, 2015 WL 3965735, at *9 (S.D. Tex. June 30, 2015) (citing *Johnson v. Manpower Prof'l Servs.*, 442 F. Appx 977, 981 (5th Cir. 2011) (quotation marks and citations omitted). Pretext can be proved by "[] weaknesses, implausibilities, inconsistencies, [] or contradictions in the employer's proffered [] reasons for its action[,] that a reasonable factfinder could [] find them unworthy of credence, and [] infer that the employer did not act for the asserted non-discriminatory reasons." *Martin v. St. Luke's Episcopal Hosp.*, No. H-13-0718, 2014 WL

18

4810303, at *10 (Sept. 23, 2014) (internal quotation marks omitted). However, "mere conjecture that the employer's reason is pretext is an insufficient basis for the denial of summary judgment." *Id.* (quotation marks omitted).

Plaintiff does not dispute that he slept on the job. (Response at 6, 8). Nor does he dispute that he signed the Second Agreement, with the assistance of a union representative. (Response at 3). Nonetheless, Radick argues that Defendant's failure to fulfill certain requests for production is evidence that its reasons are a pretext for discrimination. (*Id*. at 8). He has requested, for example, the names of all Union Pacific employees who have been found sleeping on the job in the past three years. (*See id.* at 7). It is true that trial courts often allow wide discovery of personnel files in light of the importance of establishing pretext in discrimination cases. *See Montgomery-Smith v. Louisiana Dept. Of Health & Hospitals*, No. 08-4737, 2011 WL 1831707, *at 2 (E.D. La. May 11, 2011) (citing *Freundensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004). In doing so, discovery "will naturally focus on the [] group of employees most like the plaintiff[;]" in other words, employees who are "similarly situated" to the plaintiff. *Id.* * at 1, 2.  Employee plaintiffs are permitted to cast a wide discovery net, because "[a]ll or some parts of these personnel files could be central to the plaintiffs' effort to prove pretext." *Stephens v. City of Austin*, No. 1:12-cv-659-DAE, 2014 WL 3784267, *at 4 (W.D. Tex. July 31, 2014) (internal quotations omitted). However, in the cases in which courts have granted plaintiffs wide leeway in requests for production of personnel files, that inquiry has been limited to a discrete group of employees. *See Montgomery-Smith*, 2011 WL 1831707l, *at 2 (plaintiff's discovery request limited to files of five named employees with whom she shared a supervisor); *Green v. Nicholoson*, No. 9:04-cv-227, 2005 WL 5959605, * at 3 (E.D. Tex. Sept. 22, 2005) (plaintiff's request for production limited to personnel files of employees in sales unit administered by plaintiff's supervisor); *see Coughlin*, 946 F.2d at 1158-59 (plaintiffs' requested production of personnel files for "various past and/or present

19

employees" of defendant).

Here, however, Radick has not identified any specific "similarly situated" employees. Instead, Plaintiff has made a blanket and very broad request that Defendant investigate the disciplinary history of each of its employees over the previous three years, to determine if any comparators exist. Radick bases this request on his "feel[ing]" that his discipline was "purely discriminatory[,]" and his "belie[f]" that "other employees were punished less, or not at all." (Response at 7, 8). But when he was questioned about specific instances in which employees received less severe punishment than he, Radick was unable to recall any employees suitable for comparison. (Radick Depo. at 43). Other than his subjective belief that he was targeted for discriminatory animus, Radick has presented no evidence that his discipline was a pretext for disability discrimination. Without more, Plaintiff's subjective conclusions are insufficient to justify his cumbersome discovery requests. *Sumpter v. American Bottling Co.*, 2014 WL 6088053, * at 6 (S.D. Tex. Nov. 13, 2014) (defendant's reasons for terminating plaintiff were not pretext for discrimination when plaintiff's only evidence of discriminatory intent was his own subjective belief); *Freudensprung*, 379 F.3d at 347 ("Matters related to discovery are committed to the discretion of the trial court[.]"). On this record, Plaintiff's disability claim fails.

### *Retaliation*

Plaintiff also alleges that Union Pacific retaliated against him for the failing breath analysis administered on November 27, 2012. (Amended Complaint at 4; Response at 7). He contends that the company then unfairly restricted his work place to the Houston locomotive office, despite his compliance with the rehabilitation program. (*See* Amended Complaint at 4). Under the ADA, it is unlawful to discriminate against an individual, because he sought recourse under its provisions. 42 U.S.C. § 12203(a). To make a *prima facie* case of retaliation, Radick must show that: (1) he engaged

in a statutorily protected activity; (2) an adverse employment action occurred; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). "If the employee establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007). After the employer states its reason, the employee must then prove that the employer's reason is actually a pretext for retaliation, "which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen*., 730 F.3d 450, 454 (5th Cir. 2013) (citing *Seaman v. CSPH, Inc*., 179 F.3d 297, 301 (5th Cir. 1999). To avoid summary judgment, a plaintiff must demonstrate a "conflict in substantial evidence" on the issue of whether the employer would not have taken the action "but for" the protected activity. *Id.* (citations omitted).

In this case, Plaintiff cannot establish a *prima facie* case of retaliation. Failing a breath test is not a statutorily protected activity. 42 U.S.C. § 12114(c)(2) (an employer may prohibit employees from being under the influence of alcohol at the workplace). Even assuming that such activity is statutorily protected, Radick cannot establish a causal link between the positive breath test and the allegedly adverse employment action that was taken. The workplace restrictions were imposed as a result of his admitted, intentional sleeping during a work shift, and his consent to the terms of the Second Agreement. Radick cannot enter into an agreement, fully aware of its terms, and then object to those terms, claiming that they are the result of discriminatory retaliation. Given these circumstances, Plaintiff's retaliation claim fails.

In an abundance of caution, the court has determined that Plaintiff has presented a *prima*

*facie* case of disability discrimination, but has not presented sufficient evidence to raise a genuine issue of material fact on whether Defendant's proffered reason for the employment decision was a pretext for discrimination. With regard to his retaliation claim, Plaintiff cannot prove a *prima facie* case of retaliatory conduct by Defendant. For these reasons, it is recommended that Defendant's motion for summary judgment be granted.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010,  Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 25th day of January, 2016.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**